ROBERTSON, Justice:
Starlett Chatagnier, a minor, suing by her father, Lodgie Chatagnier, was awarded $10,000 damages against Johnson S. Shaw in the Circuit Court of Harrison County, Mississippi.
Starlett was injured while she was riding as a passenger on the front seat of an automobile driven by her grandfather, Clarence Chatagnier, on the morning of December 20, 1971. They were proceeding in a westerly direction on U. S. Highway 90 when the Defendant, Jonhson S. Shaw, drove out of a side street onto U. S. 90 directly in front of them.
When Clarence Chatagnier saw that a collision was inevitable, he extended his right arm in front of Starlett, his 15-year-old granddaughter, and when the cars collided Starlett was thrown forward and hit her grandfather’s arm and then bounced backward, hitting the back of the front seat.
Appellant Shaw assigns as error:
I.
The lower court erred in allowing the Plaintiff, Starlett Chatagnier, to testify in her own behalf.
II.
The verdict of the jury was not supported by the credible medical testimony.
III.
The verdict of the jury was so excessive as to evince bias, passion and prejudice on the part of the jury.
There is no merit to assignment of error 1. There is merit to assignments of error 2 and 3.
Starlett had no broken bones and no serious scratches. ' She was not hospitalized. Dr. Zed Aydelott, a general practitioner, prescribed muscle relaxants and painkilling drugs for intermittent muscle spasms, which from time to time caused a swelling at the base of the skull. At no time was a surgical collar, a brace, cast or traction prescribed. There was no testimony as to the number of visits to Dr. Ayde-lott’s office, nor was there any testimony as to the amount of doctors’ and medical expenses incurred. Testimony along these lines would have furnished the jury some guide as to the seriousness of her injuries. Starlett testified in a general way that she had been active in sports and that she had not been able to participate in sports since her injury. She stated that between September, 1972, and February, 1973, it was necessary for her to leave school on four or five occasions and go home and rest because her neck was paining her.
In November, 1972, Dr. Aydelott sent her to Dr. Richard Buckley, a neurological surgeon, for examination and evaluation of her neck injury. Dr. Buckley found that: she moved her neck in normal fashion as she talked; there was no evidence of muscle spasm or swelling at that time; there was normal full range of her cervical spine and there was no pain except at the extremes of motion when she turned all the way to one side or the other; there was no evidence of abnormal nerve function, but there was tenderness over the prominent bone at the base of the neck.
Dr. Buckley testified:
“It was my feeling at that time that she had most likely had a chronic ligamen-tous muscular strain in her neck, causing, these recurrent bouts and that the medication and treatment that had been prescribed by Dr. Aydelott were adequate to control her symptoms. I had her get some X-rays at Howard Memorial Hospital in Biloxi and these X-rays showed no evidence of any abnormalities of the bony architecture of her neck and she *792 had normal motion of her neck. However, there was, uh, normally the neck, on X-ray pictures, has sort of a swan curve and, in her case, there was some straightening of this curve; this might indicate the presence of some muscle spasm at the time that the X-rays were made, although it is sometimes seen normally. Other than this, there was no abnormality of the X-rays and she had normal motion. She came back to see me for a report on the X-rays on the 11th of December, 1972, at which time I related this to her and recommended that she continue her symptomatic treatment for this condition.”
The record contains this question asked Dr. Buckley and his answer:
“Q And then, in other words, your diagnosis is based strictly upon her history as given to you, and not upon any objective findings?
“A Yes, sir.”
The day after Christmas, 1972, Starlett was riding her ten-speed bicycle and when the brakes didn’t hold, she flipped over the handlebars and broke her collarbone. She testified that her neck swelled at that time, but she didn’t tell the doctor about it because “I was nervous about the breaking of the collarbone because it hurt.” Dr. O’Keefe did put a brace on her for the broken collarbone.
There simply is not enough evidence in the record to justify the $10,000 verdict for Starlett’s injury and the resultant pain and suffering. We are of the opinion that the $10,000 damages awarded her was contrary to the overwhelming weight of the credible evidence. In our judgment there should be a $5,000 remittitur.
So, the judgment is affirmed as to liability, but affirmance as to damages is conditioned upon the plaintiff accepting a $5,000 remittitur. If the $5,000 remittitur is accepted within 15 days of the date this judgment becomes final then it will be affirmed also as to damages. Otherwise, the judgment will be reversed as to damages only and remanded for a new trial on the issue of damages only.
Affirmed as to liability but conditioned on remittitur as to affirmance on damages.
RODGERS, P. J., and SMITH, SUGG and BROOM, JJ., concur.